DARRELL L. COCHRAN (*Pro hac vice*)
(darrell@pcvalaw.com)
JASON P. AMALA *(Pro hac vice)*
(jamala@pcvalaw.com)
LOREN A. COCHRAN (*Pro hac vice pending*)
(loren@pcvalaw.com)
KEVIN M. HASTINGS (*Pro hac vice*)
(kevin@pcvalaw.com)
CHRISTOPHER E. LOVE (*Pro hac vice*)
(chris@pcvalaw.com)
Pfau Cochran Vertetis Amala PLLC
911 Pacific Ave., Ste. 200
Tacoma, WA 98402
Tel: (253) 777-0799

***Attorneys for Plaintiffs***
***(Additional Counsel on Signature Page)***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

NICHOLAS LUSSON, BRYANT
KUSHMICK, ALEXANDER SAENZ,
JOHN DENOMA, and NORA PENNER,
individually, and on behalf of all others
similarly situated,

                       Plaintiffs,

    vs.

APPLE, INC., a California Company,

                  Defendant.

No.  3:16-cv-00705-VC

SECOND AMENDED CLASS ACTION
COMPLAINT

**DEMAND FOR JURY TRIAL**

SECOND AMENDED CLASS ACTION COMPLAINT
3:16-CV-00705-VC



I. INTRODUCTION ......................................................................................... 1

II. FACTUAL ALLEGATIONS ......................................................................... 3

    A. The Devices ........................................................................................ 3

    B. Apple Software Updates and "Error 53" ............................................. 4

    C. Apple Failed to Warn Consumers of the Risk of Error 53 When
           Installing the Operating Systems ........................................................ 7

III. CLASS ALLEGATIONS ............................................................................. 8

    A. Numerosity ......................................................................................... 9

    B. Commonality and Predominance ..................................................... 10

    C. Typicality ......................................................................................... 10

    D. Adequacy ......................................................................................... 11

    E. Declaratory and Injunctive Relief .................................................... 11

    F. Superiority ........................................................................................ 11

IV. JURISDICTION AND VENUE ................................................................. 11

V. PARTIES ................................................................................................... 12

    A. Nicholas Lusson ............................................................................... 12

    B. Bryant Kushmick .............................................................................. 13

    C. Alexander Saenz ............................................................................... 13

    D. John DeNoma .................................................................................... 14

    E. Nora Penner ...................................................................................... 15

    F. Defendant Apple, Inc. ....................................................................... 15

VI. CAUSES OF ACTION ............................................................................... 16

    A. Claims Asserted on Behalf of the Nationwide Class and the Worldwide
           Class .................................................................................................. 16

           1. Count I – Negligence ........................................................... 16



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

2.      Count II – Negligent Misrepresentation ................................. 17

3.      Count III - Violation of California Unfair Competition Law (Cal. Bus. & Prof. Cod §§ 17200, *et seq.*)....................... 19

4.      Count IV - Violation of California False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*).................... 20

5.      Count V - Violation of California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, et seq.).................... 22

6.      Count VI - Unjust Enrichment ................................................ 24

VII.    PRAYER FOR RELIEF ......................................................................... 25

VIII.   JURY TRIAL DEMANDED ....................................................................... 26

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

## I.      INTRODUCTION

1.      Plaintiffs Nicholas Lusson, Bryant Kushmick, Alexander Saenz, John DeNoma, and Nora Penner, individually and on behalf of all others similarly situated both in the United States, and in this First Amended Complaint, worldwide, allege the following against Apple, Inc. ("Defendant," "Apple Corporation," or "Apple"), based where applicable on personal knowledge, information and behalf, and/or the investigation of counsel.

2.      Almost a decade ago, the Apple Corporation pioneered the cellular phone industry with the advent of the iPhone, a device that hundreds of millions of consumers across the globe have purchased.  The iPhone has become a technological and cultural phenomenon, creating enormous influence that has impacted all age groups and all socio-economic levels.  Subsequently, Apple again captured lightning in a bottle with its iPad, one of the world market's premiere tablet computers.  The Apple Corporation has been both ingenious in its creation of these influential products and complete in its control of all aspects of their marketing, distribution, and repair.  Apple's enormous success with the iPhone and iPad has resulted in what is frequently described as a "cult-like following," and the establishment of a powerful control over the technology marketplace now reflected in its corporate market capitalization of over $700 billion.

3.      As is invariably true of power and control, too much of a good thing becomes problematic and, even, abusive.  Apple's Error 53 code, for which this lawsuit seeks redress, represents Apple's control over the product gone too far.  Error 53 is the result of an imbedded function within iOS, Apple's operating system, and/or Apple devices, that affects iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus smartphones and certain models of iPad tablets (collectively, "Affected Models"; generically, "device" or "devices" or "iPhones").  The code has rendered thousands of the Affected Models completely disabled or "bricked" after its users updated iOS or restored the device from a backup.  After spending hundreds of dollars purchasing Affected Models, the Plaintiffs here had their devices rendered useless.



4.      Consumers began receiving an Error 53 code in early 2015, and likely earlier.  Many consumers raised the issue with Apple representatives immediately because inoperable devices represented hardships both personally and professionally.  Apple representatives told consumers that disabled devices could not be fixed under warranty and were a problem the consumer created by using an unauthorized repair service to fix a hardware issue with the device.  Some consumers had used a repair service other than an Apple service to fix problems such as broken screens and "Home" buttons.  However, they pointed out to Apple representatives that nothing in marketing materials or purchase documents ever disclosed that their devices would be destroyed by imbedded features if they had repaired devices using an independent service and then updated to certain iOS versions.  Other consumers advised Apple representatives that no repairs had been done but the error code had disabled their devices anyway.  Apple has regularly advised consumers who have experienced the Error 53 code that their situation will not be fixed under warranty and, frequently, that the only solution is to purchase a new device.  Despite months of opportunity to provide a replacement device and/or restore existing devices, Apple offered no remedy to or relief for its customers.  This lawsuit seeks to provide both remedy and relief for consumers of the Affected Models who have experienced the Error 53 code.

5.      The "security features" and "security" measures that gave rise to the Error 53 code were included within iOS version 8.0.1 and all subsequent versions of the iOS 8 operating system, as well as the iOS 9 operating system and subsequent versions.  Despite knowing about the features, Apple took no steps to warn consumers and owners of the Affected Models that updating software or restoring data would result in an Error 53 code that would render the device inoperable and cause data loss. As of November 2015, it was estimated that more than 62 million units of the Affected Models were in use in the United States, meaning that Apple's misleading and unfair practices as alleged in this Complaint have had a widespread impact on consumers throughout the nation and the world.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

## II.    FACTUAL ALLEGATIONS

### A.  The Devices

6.      Apple manufactures one of the most popular smartphones in the world, the iPhone.  Apple also manufactures one of the most popular tablet computers in the world, the iPad.  Relevant to this case, Apple manufactures the Affected Models.

7.      Apple has sold millions of the Affected Models.  Indeed, more than 10 million units of the iPhone 6 and iPhone 6 Plus were sold during the first three days the models were released for purchase on September 19, 2014.  Prices started at approximately $649 for the iPhone 6 and approximately $749 for the iPhone 6 Plus, with increasing prices based on optional features such as expanded memory capacity.

8.      The Affected Models contain a "Home button" located in the center of the bottom-horizontal edge of the devices.  The Home button is physically pressed to utilize many functions of the Affected Models, such as progressing from the "Lock screen" (similar to a screen saver on a personal computer) to the "Home screen," which allows users to access the device's software applications ("apps"); digitally-stored information, such as photographs and text messages; the device's settings and control thereof; and other core functionalities of the device.

9.      The Home button itself contains a fingerprint-sensing chip ("Touch ID sensor" or "sensor") to enable "Touch ID" functionality.  Touch ID allows a user to scan and store their fingerprint in the device.  Subsequently, a user may utilize their stored fingerprint as a "passkey" to progress from the Lock screen to the Home screen by placing their finger on the Home button, allowing the device to verify through the sensor a match between the current user's fingerprint and the stored fingerprint.

10.      Touch ID also allows a user to access the functionality of a device's apps.  For example, a user may use their fingerprint via the Touch ID sensor to complete purchases at participating retailers using Apple Pay, an app that enables a user to store his/her credit and/or



debit card information and use those cards for purchases simply by scanning the device's screen using an electronic reader.

11.     According to Apple, Touch ID "enhance[s] the user experience by making it simpler and more intuitive to secure the device."[1]   Also according to Apple, a device's hardware is tightly integrated to the software.   "This architecture is central to security in iOS, and never gets in the way of device usability."[2]

**B.  Apple Software Updates and "Error 53"**

12.     The regular release of software updates and seamless integration between software and hardware are primary marketing points for Apple to sell more devices.   On its website, Apple says the following about iPhones:

> Every iPhone we've made – and we mean every single one – was built on the same belief.   That a phone should be more than a collection of features.   That, above all, a phone should be absolutely simple, beautiful, and magical to use.
>
> It should have hardware and software that were designed to work with each other.   And enhance each other.   By people who frequently see each other.   That's how you make a phone that works ridiculously well.
>
> And whenever there are shiny, new software updates with shiny, new features, you should be able to sit back, relax, and know your phone will get them.   ***And be compatible with them.***   For years.   For free.

(Emphasis added).

13.     According to Apple, "Users receive iOS update notifications on the device and through iTunes, and updates are delivered wirelessly, encouraging rapid adoption of the latest security fixes."[3]   Apple "pushes" Operating System updates to users' devices connected to the Internet.   These "pushes" cause a prompt to appear on a user's device informing the user of the update and asking the user to choose to install the update then or later.   When a user opts to install the update later, the "push" prompt regularly reappears on the user's device until the user installs the update.

---

[1] "iOS Security – iOS 9.0 or later," published by Apple in September 2015.

[2] "iOS Security – iOS 9.0 or later," published by Apple in September 2015.

[3] "iOS Security – iOS 9.0 or later," published by Apple in September 2015.



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

14.     On or about September 24, 2014, Apple released "iOS 8.0.1," an updated version of Apple's iOS 8 operating system for Apple devices.   On or about September 16, 2015, Apple released "iOS 9," its newest operating system for Apple devices.  iOS 8.0.1 and all subsequent versions of the iOS 8 operating system, as well as iOS 9 and all subsequent versions of that operating system (the "Operating System" or "Operating Systems"), were designed, created, and provided by Apple to consumers for download and installation on their devices, either wirelessly or through iTunes.

15.     Initially, Apple publically attributed Error 53 to so-called "security measures" and "security checks" contained within the Operating Systems and/or Affected Models related to the Touch ID sensor.  Specifically, in a statement to *The Guardian* reported in a  February 5, 2015, an Apple spokesperson stated:

> We protect fingerprint data using a secure enclave, which is uniquely paired to the touch ID sensor.

*          *          *

> When iOS detects that the pairing fails, Touch ID, including Apple Pay, is disabled so the device remains secure.

16.     In plainer language, the Operating Systems contain a feature that attempts to verify whether the device's original Touch ID "modules" are still present within the device when installing the Operating Systems or restoring the device from a backup.  If the attempt fails, the alleged "security measures" are triggered and the device displays an "Error 53" message:





PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

17.     Catastrophically for users, Error 53 does far more than disable Touch ID: Error 53 sends the device into "Recovery Mode," requiring the user to plug the device into a personal computer and complete updating and restoration of the device using Apple's iTunes software.  Unfortunately, updating and restoring a device experiencing Error 53 via Recovery Mode simply sends the device right back into Recovery Mode, trapping the device in an endless loop.

18.     In its practical effect, Error 53 renders devices entirely useless and inoperable (colloquially known as "bricking" the device, i.e., rendering the device an inert, useless brick).  Data that was stored on the device, such as photographs or video, is also permanently gone unless previously saved at a retrievable location.

19.     Even worse for users, numerous situations can lead to the failed verification triggering Error 53.  For example, replacement of the device's original Home button (that contains the original Touch ID sensor) will trigger Error 53.  Further, as Apple admits on its support website addressing Error 53, replacements of the device's screens can trigger Error 53.

20.     Additionally, replacements of the "flex cable" connected to the Home button and Touch ID sensor and conveying fingerprint data to the Central Processing Unit can trigger Error 53.

21.     Moreover, Error 53 can be triggered even with no replacement or repair of the Touch ID sensor or its components or apparent damage to or disassembly of the device.   For example, in an article originally published on April 15, 2015, on *The Daily Dot*, one iPhone 6 Plus user described the gradual degradation in performance and failure of his device's touchscreen, Touch ID sensor, and Home and Lock buttons.  Eventually, this user attempted to install iOS 8.3.  After several failed installations, the user attempted to install the update by connecting the device to a personal computer and the iTunes software.  Once connected, Error 53 triggered, rendering the device unusable.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

22.     As other examples, tears in the "flex cable," a malfunction of the Touch ID sensor in a never opened device, minor liquid damage that enters the Home button and disables the Touch ID sensor, or other potential hardware issue can all trigger Error 53.

23.     Once Error 53 trigged, affected users had no means of regaining access to or use of the device or any digitally-stored information on the device that was not backed up before Error 53 occurred.  Instead, the only "solution" offered by Apple was a conveniently profitable one for it:  Purchase a new Apple device.

### C. Apple Failed to Warn Consumers of the Risk of Error 53 When Installing the Operating Systems

24.     Error 53 and its effects came as no surprise to Apple.  As it widely acknowledges, Apple has designed the device hardware and software to work together: "System security is designed so that both software and hardware are secure across all core components of every iOS device."[4]  "The tight integration of hardware and software on iOS devices ensures that each component of the system is trusted, and validates the system as a whole."[5]  As such, Apple provides Apple technicians with the capability to synchronize new Touch ID sensors or components with a device's central processing unit, thus causing the device to accept the new components and pass the check that otherwise results in Error 53.

25.     On one hand, Apple purposely included the features triggering Error 53 within the Operating Systems and/or Affected Models, and on the other, it failed to disclose these features or the existence of Error 53 to consumers with Affected Models when installing the Operating Systems.

26.     Apple also did not and does not provide this synchronization capability to independent repair vendors for Affected Models.

---

[4] "iOS Security – iOS 9.0 or later," published by Apple in September 2015.

[5] *Id.*



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27.     In many instances, Apple charges many times the amount charged by independent repair vendors—sometimes hundreds of dollars—for simple repairs, such as installation of a new Home button lacking the original Touch ID sensor that can trigger Error 53.  This is only when Apple is willing to perform the requested repair, however.  In many instances, Apple will refuse to perform repairs, such as replacing a failed headphone jack worth approximately $7.00, instead insisting that customers must buy a new device.   In contrast, independent repair vendors will perform these repairs for little more than the cost of parts and labor.

28.     Apple knew or should have known that many owners of the Affected Models would choose to utilize the reasonably-priced services of independent repair vendors who had no ability to synchronize new Touch ID sensor components with the device in order to prevent an Error 53 occurrence.

29.     Despite this knowledge, however, Apple failed to disclose the security features triggering Error 53, the existence of Error 53 itself, and/or the risk that the utilization of independent repair services could trigger Error 53 to consumers when installing the Operating Systems.

30.     Furthermore, and contrary to its previous statements that Error 53 arose from "security features" intended to protect devices out in the wild among consumers, Apple now has publically admitted in statements to the *TechCrunch* website that the features triggering Error 53 were only intended to be a "factory test" designed to "check whether Touch ID works properly before the device leaves the factory."

### III.     CLASS ALLEGATIONS

31.     Plaintiffs bring this action on behalf of themselves and as a class action, within the United States and worldwide, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Classes:



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

(1)   All persons or entities in the United States who are owners of an "Error 53 Device." Error 53 Devices include, without limitation, Apple iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, and any and all model iPad units rendered inoperable by Error 53.

(2)   All persons or entities worldwide who are owners of an "Error 53 Device." Error 53 Devices include, without limitation, Apple iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, and any and all model iPad units rendered inoperable by Error 53.

32.      Excluded from the Class are individuals who have personal injury claims resulting from occurrences of Error 53. Also excluded from the Class are Apple and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

33.      Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

34.      This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

### A.  Numerosity

35.      The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiffs are informed and believe that there are not less than hundreds of thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Apple's records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.



**B.  Commonality and Predominance**

36.     This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a)     Whether Apple engaged in the conduct alleged herein;

(b)     Whether Apple designed, advertised, marketed, distributed, sold, or otherwise placed the Affected Models and/or the Operating Systems into the stream of commerce in the United States and worldwide;

(c)     Whether the Affected Models and/or Operating Systems contain features triggering Error 53 in Affected Models;

(d)     Whether Apple knew about the features triggering Error 53 and/or Error 53 itself and, if so, how long Apple has known;

(e)     Whether Apple designed, manufactured, marketed, and distributed the Affected Models and/or Operating Systems containing features that trigger Error 53;

(f)     Whether Apple's conduct violates consumer protection statutes and other laws as asserted herein;

(g)     Whether Plaintiffs' and the other Class members' devices were rendered inoperable by Error 53;

(h)     Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

(i)     Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

**C.  Typicality**

37.     Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Apple's wrongful conduct as described above.



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

9ll Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

### D.  Adequacy

38.    Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

### E.  Declaratory and Injunctive Relief

39.    Apple has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

### F.  Superiority

40.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Apple, so it would be impracticable for members of the Class to individually seek redress for Apple's wrongful conduct.

41.    Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## IV.    JURISDICTION AND VENUE

42.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because (a) at least one member of the putative class action is a citizen of a state

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under the subsection apply to this action.

43.     This Court has personal jurisdiction over the defendant because it conducts significant business in this District and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

44.     This Court has pendant and supplemental subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

45.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant maintains its headquarters and principal place of business in this District and a substantial part of the events giving rise to Plaintiffs' Complaint occurred in this District.

**V.     PARTIES**

**A.     Nicholas Lusson**

46.     Plaintiff Lusson, a citizen of San Francisco, California, purchased a 64 gigabyte iPhone 6 in or around the fall of 2014.  He paid the standard upgrade fee for an AT&T contracted phone.

47.     In or around December 2015, Plaintiff Lusson's iPhone received water damage and stopped working.  On or around January 2, 2016, Plaintiff Lusson took his iPhone to a repair vendor to be fixed.  The repair vendor replaced his screen and home button.  The iPhone worked perfectly after the repair.

48.     Approximately two weeks later, Plaintiff Lusson received a notification for an Operating System update.  He attempted to install the update and the Error 53 code appeared. Plaintiff Lusson took his iPhone to an Apple store, where he was advised to buy a new phone because Apple is "not responsible for third party repairs."

49.     Plaintiff Lusson would not have attempted to install the Operating System update and/or purchased an Affected Model had he been warned or notified by Apple that Error 53 might occur and/or that his device might be rendered inoperable and unusable.



**B.      Bryant Kushmick**

50.      Plaintiff Bryant Kushmick, a citizen of Satellite Beach, FL, purchased an iPhone 6 on or around September 19, 2014.

51.      After Plaintiff Kushmick purchased the iPhone 6, it developed a small crack in the Home button and the Touch ID sensor stopped working.  Plaintiff Kushmick did not think much of the cracked Home button, as he did not use the device's Touch ID functionality and the device otherwise functioned perfectly.

52.      The day Apple released iOS 9, Plaintiff Kushmick attempted to install the Operating System.  The installation started and Error 53 appeared.

53.      Subsequently, Plaintiff Kushmick visited an Apple store an hour's drive away.  After making Plaintiff Kushmick wait for two hours, Apple offered to replace the phone for approximately $300.00.  Plaintiff Kushmick declined.

54.      Plaintiff Kushmick has not been able to use his iPhone 6 since Error 53 occurred and eventually bought a new smartphone from Apple for approximately $1,100.00.

55.      Plaintiff Kushmick would not have attempted to install the Operating System update and/or purchased an Affected Model had he been warned or notified by Apple that Error 53 might occur and/or that his device might be rendered inoperable and unusable.

**C.      Alexander Saenz**

56.      Plaintiff Alexander Saenz, a citizen of Wellington, Florida, purchased an iPhone 6 in or around November 2014.  He purchased the phone for the cost of a retail 2-year agreement price, which was either $199.00 or $299.00.

57.      Plaintiff Saenz began having issues with his iPhone Home button responding.  He took the device to a repair vendor, who advised him that the Touch ID would no longer work after repair.  Plaintiff Saenz consented to the repair and paid $25.00 for the work and parts.  His phone worked sans Touch ID until he updated to iOS 9.2.0, at which point he received the Error 53 code and his phone lost all functionality.  The update occurred before he was able to successfully back-up the data on his phone.



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company
911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

58.     Plaintiff Saenz took his iPhone back to the independent repair vendor, who was unable to diagnose the issue.  Plaintiff Saenz then took the phone to an Apple store, where he was advised that they could not restore it and that he would need to buy a new phone.

59.     Plaintiff Saenz would not have attempted to install the Operating System update and/or purchased an Attended Model had he been warned or notified by Apple that Error 53 might occur and/or that his device might be rendered inoperable and unusable.

**D.     John DeNoma**

60.     Plaintiff John DeNoma, a citizen of Monmouth, Oregon, purchased an iPhone 6 Plus in or around March 2014.  He purchased the phone for approximately $700.

61.     In or around November 2014, Plaintiff DeNoma's iPhone screen shattered. The device was taken to an Apple store that quoted $129.00 to replace the phone screen. Shortly later, a small dent on the top of the phone was observed, and the Apple technician stated that the screen could not be repaired because of the dent, and that purchasing a $349 replacement device was the only option.

62.     Plaintiff DeNoma decided to replace the screen himself after researching how to do so.  While replacing the screen, he broke the ribbon cable that connected the Touch ID to the device, so he ended up replacing the entire home button.  The iPhone worked great after the repair.

63.     Sometime in or around December 2015, Plaintiff DeNoma updated the iPhone to iOS 9.1.2.  Halfway through the process, the device froze and the Error 53 code appeared.

64.     Plaintiff DeNoma would not have attempted to install the Operating System update and/or purchased an Affected Model had he been warned or notified by Apple that Error 53 might occur and/or that his device might be rendered inoperable and unusable.



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

1

### E.   Nora Penner

2

65.    Plaintiff Nora Penner, a citizen of Peoria, Arizona, purchased an iPhone 6 in or

3

around July 2015.  She purchased the phone through a subsidized T-Mobile carrier plan and is

4

still currently making monthly payments for the purchase price of the phone.

5

66.    In or around November 2015, Plaintiff Penner's iPhone 6 fell into a toilet for a

6

brief second.  Plaintiff Penner took her iPhone to be repaired at a repair shop, where the repair

7

vendor repaired some internal water corrosion but did not replace the screen or Home button.

8

After the repair, Plaintiff Penner's iPhone 6 began working again, including the Touch ID

9

functionality.

10

67.    In or around January 2016, Plaintiff Penner's iPhone 6 Touch ID stopped

11

functioning.  Shortly thereafter, Plaintiff Penner attempted to update the Operating System to

12

iOS 9.2.1.  The installation started and Error 53 appeared.

13

68.    On or around February 6, 2016, Plaintiff Penner visited an Apple store.   Apple

14

offered to replace the phone for $299.00 and called T-Mobile to see whether Plaintiff would

15

qualify for an upgrade, which would also cost money.

16

69.    Plaintiff Penner has not been able to use her iPhone 6 since and has instead

17

been using an old cellular phone in its place.

18

70.    Plaintiff Penner would not have attempted to install the Operating System

19

update and/or purchased an Affected Model had she been warned or notified by Apple that

20

Error 53 might occur and/or that her device might be rendered inoperable and unusable.

21

### F.   Defendant Apple, Inc.

22

71.    Apple, Inc., is a corporation organized under the laws of California, with its

23

principal place of business at 1 Infinite Loop, Cupertino, CA, 95014.

24

72.    At all relevant times, Apple manufactured, distributed, sold, and warranted the

25

Affected Models and/or the Operating Systems throughout the nation.  Apple and/or its agents

26

designed the Affected Models and/or the Operating Systems, including the features triggering

Error 53.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

# VI.     CAUSES OF ACTION

## A.  Claims Asserted on Behalf of the Nationwide Class and the Worldwide Class

### 1.  <u>Count I – Negligence</u>

73.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

74.     Plaintiffs bring this claim on behalf of themselves and the proposed Class.

75.     Apple owed a duty to Plaintiffs and the Class members to use reasonable care to ensure that the Operating Systems were safe, reliable, and functional for Affected Models or, at the very least, would not render Affected Models inoperable and unusable.

76.     Apple also owed a duty to Plaintiffs and the Class members to disclose that the Operating Systems and/or Affected Models contained features that could trigger Error 53, Error 53's existence, and/or that the features and/or Error 53 could render Affected Models inoperable and unusable.

77.     Apple further owed a duty to Plaintiffs and the Class members to disclose that the Operating Systems and/or Affected Models contained features that could trigger Error 53, Error 53's existence, and/or that the features and/or Error 53 could render Affected Models inoperable and unusable if Plaintiffs and the Class members utilized independent repair services.

78.     Apple's duties arose from Apple's design, creation, manufacture, distribution, and provision of the Operating Systems and/or Affected Models to Plaintiffs and the Class members.  Further, Apple's duties arose from its acts of affirmatively "pushing" prompts to install the Operating Systems to Plaintiffs' and the Class members' devices.

79.     Apple knew or should have known that the Operating Systems and/or Affected Models contained features that would trigger Error 53 and that Error 53 and/or the features would render Affected Models inoperable and unusable because Apple designed the Affected Models and the Operating Systems and controlled how the Operating Systems' and/or the



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

Affected Models' so-called security features would affect the functionality of Affected Models failing to pass the check triggering Error 53

80.     Apple breached its duties by failing to use reasonable measures to ensure the Operating Systems' and/or Affected Models' features would not render Affected Models inoperable and/or by failing to warn or disclose that installation or attempted installation—either with or without utilization of independent repair services—of the Operating Systems on Affected Models could render the devices inoperable and unusable.

81.     It was reasonably foreseeable that Apple's breach of its duties would result in injury to Plaintiffs and the Class members, including but not limited to the loss of their devices, the cost of any services utilized in an attempt to remedy the inoperability of their devices, and the cost of purchasing a replacement device.

82.     Accordingly, Plaintiffs and the Class members seek an order declaring that Apple's conduct constitutes negligence, and awarding them damages in an amount to be determined at trial.

### 2. <u>Count II – Negligent Misrepresentation</u>

83.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

84.     Plaintiffs bring this claim on behalf of themselves and the proposed Class.

85.     Apple had a duty to disclose to Plaintiffs and the Class members that the Operating Systems and/or Affected Models contained features that could trigger Error 53; the existence of Error 53 itself; and, far from simply disabling Touch ID, that the true nature of Error 53 and/or the features was to render Plaintiffs' and the Class members' devices unusable and inoperable.

86.     Likewise, Apple had a further duty to disclose to Plaintiffs and the Class members that the Operating Systems and/or Affected Models contained features that could trigger Error 53, the existence of Error 53 itself, and/or that Error 53 and/or the features could



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

render their devices unusable and inoperable if Plaintiffs and the Class members utilized the services of independent repair vendors.

87.     Apple negligently and/or carelessly misrepresented, omitted, and concealed from consumers material facts relating to the Operating Systems and/or Affected Models.

88.     These misrepresentations and omissions were material and concerned the specific characteristics of an operating system and/or device that a reasonable consumer would consider in choosing to install the Operating Systems on their device and/or purchase an Affected Model.

89.     As a result of Apple's misstatements and omissions, it was under a duty to disclose the additional facts necessary to avoid any misrepresentation or confusion.  Further, Apple knew of its misrepresentations and omissions because Apple designed the Affected Models and the Operating Systems and controlled how the Operating Systems' and/or Affected Models' so-called security features would affect the functionality of Affected Models failing to pass the check triggering Error 53.

90.     At the time Apple failed to disclose, concealed, suppressed and//or omitted material information, Apple knew, or by the exercise of reasonable care should have known, that the statements were false and misleading to reasonable consumers.

91.     Plaintiffs and Class members justifiably relied on Apple's misrepresentations and omissions about the Operating Systems and/or Affected Models.  Plaintiffs and Class members were unaware of the falsity of Apple's misrepresentations and omissions and, as a result, justifiably relied on them in installing the Operating Systems on their devices and/or purchasing the Affected Models.  Had Plaintiffs and Class members been aware of the true nature of the Operating Systems and/or Affected Models and features triggering Error 53, they would have chosen not to install the Operating Systems and/or purchase an Affected Model.  Plaintiffs request that this Court order Apple to disable the Operating Systems' features that render devices completely unusable and inoperable upon instances of Error 53.



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

92.     As a direct and proximate result of Apple's misrepresentations and omissions of material fact, Plaintiffs and Class members have suffered damages and losses as alleged herein in an amount to be determined at trial.

**3.  <u>Count III - Violation of California Unfair Competition Law (Cal. Bus. & Prof. Cod §§ 17200, *et seq.*)</u>**

93.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

94.     Plaintiffs bring this Count on behalf of themselves and the proposed Class.

95.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

96.     Apple's conduct, as described herein, was and is in violation of the UCL. Apple's conduct violates the UCL in at least the following ways:

(a)     By knowingly and intentionally concealing from Plaintiffs and the other Class members that the Operating Systems and/or Affected Models contained features that trigger Error 53 and/or render Affected Models inoperable and unusable;

(b)     By knowingly and intentionally concealing from Plaintiffs and the other Class members that the Operating Systems and/or Affected Models contained features rendering them unable to utilize the services of independent repair vendors without a risk of triggering Error 53 and/or rendering their Affected Models inoperable and unusable;

(c)     By marketing Apple software updates as compatible with devices and vice versa when, in fact, the Operating Systems and/or Affected Models contained features that could render Affected Models inoperable and unusable when merely attempting to install them;

(d)     By violating other California laws.



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

97.     Apple's misrepresentations and omissions alleged herein caused Plaintiffs and the other Class members to install the Operating Systems and/or purchase Affected Models containing features that subsequently triggered Error 53 in their devices, rendering the devices inoperable and unusable.  Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have installed the Operating Systems and/or purchased the Affected Models.

98.     Accordingly, Plaintiffs and the other Class members have suffered injury in fact including lost money or property as a result of Apple's misrepresentations and omissions.

99.     Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Apple under Cal. Bus. & Prof. Code § 17200.

100.    Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Apple from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

4.     **Count IV – Violation of California False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, _et seq._)**

101.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

102.    Plaintiffs bring this Count on behalf of themselves and the proposed Class.

103.    California Bus. & Prof. Code § 17500 states:

It is unlawful for any . . . corporation ... with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

104.    Apple caused to be made or disseminated through California, the United States and the entire world, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Apple, to be untrue and misleading to consumers, including Plaintiffs and the other Class members.

105.    Apple has violated § 17500 because the misrepresentations and omissions regarding the safety, reliability, functionality, and compatibility of the Operating Systems and/or Affected Models as set forth in this Complaint were material and likely to deceive a reasonable consumer.

106.    Plaintiffs and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Apple's unfair, unlawful, and/or deceptive practices. In installing or attempting to install the Operating Systems on Affected Model and/or purchasing Affected Models, Plaintiffs and the other Class members relied on the misrepresentations and/or omissions of Apple with respect to the safety, reliability, and functionality of the Operating Systems and/or Affected Models and their compatibility with each other. Apple's representations turned out not to be true because the Operating Systems and/or Affected Models contain features that can and do trigger Error 53 in Affected Models and/or render Affected Models inoperable and unusable.    Furthermore, Apple's representations turned out not to be true because the Operating Systems and/or Affected Models contain features that can and do trigger Error 53 in Affected Models and/or render Affected Models inoperable and unusable if a user utilized an independent vendor for repairs. Had Plaintiffs and the other Class members known this, they would not have installed or attempted to install the Operating Systems and/or purchased an Affected Model. Accordingly, Plaintiffs and the other Class members installed or attempted to install the Operating Systems expecting safe, reliable, and functional software that was compatible with their devices or

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

1
2

purchased Affected Models that they expected would be compatible with Operating Systems updates that instead resulted in an inoperable and unusable device.

3
4
5
6

107.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Apple's business. Apple's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

7
8
9
10
11

108.    Plaintiffs, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Apple from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other Class members any money Apple acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

12
13

**5.   Count V - Violation of California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, et seq.)**

14
15

109.    Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

16
17

110.    Plaintiffs bring notice only at this point regarding this Count on behalf of members of the Class.

18
19
20
21

111.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

22

112.    The Affected Models are "goods" as defined in Cal. Civ. Code § 1761(a).

23
24
25

113.    Plaintiffs and the other members of the Class are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiffs, the other members of the Classes, and Apple are "persons" as defined in Cal. Civ. Code § 1761(c).

26



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

114.    As alleged above, Apple made numerous representations concerning the benefits, efficiency, and seamlessness of its Operating System updates and Affected Models that were misleading.

115.    In purchasing Affected Models and downloading an Operating System they were led to believe would be beneficial, Plaintiffs and the other Class members were deceived by Apple's failure to disclose that the Affected Models and/or Operating Systems contained features designed to make Affected Models inoperable.

116.    Further, Plaintiffs and the other Class members unnecessarily have incurred fees and costs in attempting to have Apple restore the use of and/or replace their Affected Models.  Specifically, and without limitation, Apple represented to some Plaintiffs and Class members that the only solution for their problem was to purchase a new Apple device.

117.    Apple's conduct, as described herein, was and is in violation of the CLRA. Apple's conduct violates at least the following enumerated CLRA provisions:

118.    Cal. Civ. Code § 1770(a)(5): Representing that goods have characteristics, uses, and benefits which they do not have;

119.    Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

120.    Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised;

121.    Cal. Civ. Code § 1770(a)(15):  Representing that a part, replacement, or repair service is needed when it is not; and

122.    Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

123.    Plaintiffs and the other members of the Class have suffered injuries in fact and actual damages resulting from Apple's material omissions, misrepresentations and affirmative acts because their property was made inoperable by Apple's conduct.



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

124. Apple knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of its Operating Systems and/or Affected Models, their incompatibility with each other, and that they contained features that would trigger Error 53 and render the devices inoperable.

125. The facts concealed and omitted by Apple to Plaintiffs and the other members of the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Affected Models or attempts to install the Operating Systems which would render their devices inoperable. Had Plaintiffs and the members of the Class known about the defective nature of the Affected Models and the Operating Systems, they would not have purchased the Affected Models or would not have downloaded the offending Operating Systems.

126. Plaintiffs and the other members of the Class's injuries were proximately caused by Apple's fraudulent and deceptive business practices.

127. Therefore, Plaintiffs and the other members of the Class are entitled to equitable and monetary relief under the CLRA.

128. On February 19, 2016, and pursuant to Cal. Civ. Code § 1782(a), Plaintiffs provided Apple with notice of its violations of the CLRA.

**6. <u>Count VI - Unjust Enrichment</u>**

129. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

130. Plaintiffs assert this Count on behalf of themselves and the proposed Class.

131. After experiencing Error 53, Plaintiffs and Class members conferred an economic benefit on Apple by purchasing Affected Models from Apple, purchasing new devices from Apple as replacements for Affected Models, or paying Apple for related services.



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

132.     Apple's financial benefits resulting from its unlawful conduct as described throughout this Complaint are economically traceable to the features contained within the Operating Systems and/or Affected Models that trigger Error 53, Error 53's existence, and/or the features' and/or Error 53's rendering Affected Models inoperable and unusable.

133.     The economic benefit of the purchase price of Affected Models, replacement devices, and/or services derived by Apple through its concealment, misrepresentations, failures to disclose, and/or omission regarding the features' and Error 53's potential effects on Affected Models is a direct and proximate result of Apple's unlawful acts.

134.     It would be inequitable and unjust for Apple to be permitted to retain any of the unlawful proceeds resulting from their illegal and inequitable conduct.

135.     As alleged in this Complaint, Apple has been unjustly enriched as a result of its wrongful conduct and unfair competition.  Plaintiffs and the Class members are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Apple as a result of such business practices.

## VII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class, respectfully request the following relief:

A. Certification of the proposed Classes, including appointment of Plaintiffs' counsel as Class Counsel;

B. An order temporarily and permanently enjoining Apple from continuing the unlawful, deceptive, and unfair business practices alleged in this Complaint;

C. Injunctive relief in the form of a software update preventing Error 53 from rendering Affected Models completely inoperable and unusable and/or rendering "bricked" devices operable and usable again;



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

D.  Injunctive relief in the form of putting all repair or replacement costs under warranty;

E.  Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

F.  For treble and/or punitive damages as permitted by applicable laws;

G.  An order requiring Apple to pay both pre- and post-judgment interest on any amounts awarded;

H.  An award of costs and attorneys' fees; and

I.  Such other or further relief as may be appropriate.

## VIII.    JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

//

//

//

//

//

//

//

//

//

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654
www.pcvalaw.com

1                                                                    Respectfully submitted,

Dated: April 13, 2016                 **NICHOLAS LUSSON**, individually and on behalf of all other similarly situated

By:     /s/ Darrell L. Cochran
             One of Plaintiffs' Attorneys

By:     /s/ Timothy A. Scott

DARRELL L. COCHRAN (*Pro hac vice*)
(darrell@pcvalaw.com)
JASON P. AMALA *(Pro hac vice)*
(jamala@pcvalaw.com)
LOREN A. COCHRAN (*Pro hac vice pending*)
(loren@pcvalaw.com)
KEVIN M. HASTINGS (*Pro hac vice*)
(kevin@pcvalaw.com)
CHRISTOPHER E. LOVE (*Pro hac vice*)
(chris@pcvalaw.com)
Pfau Cochran Vertetis Amala PLLC
911 Pacific Ave., Ste. 200
Tacoma, WA 98402
Tel: (253) 777-0799

TIMOTHY A. SCOTT (Bar No. 215074)
(tscott@timscottlaw.com)
LAW OFFICES OF TIMOTHY A. SCOTT, APC
1350 Columbia Street, Ste. 600
San Diego, CA 92101
Tel: (619) 652-9970

4849-3359-6974, v. 1



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799 Facsimile: (253) 627-0654
www.pcvalaw.com