UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NICHOLAS LUSSON, et al.,

    Plaintiffs,

v.

APPLE, INC.,

    Defendant.

Case No. 16-cv-00705-VC

**ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS**

Re: Dkt. No. 55, 56

### I. Implied warranty

As codified by Song-Beverly, the implied warranty of merchantability requires that consumer products be "fit for [their] ordinary purposes" for up to a year after purchase. Cal. Civ. Code § 1791.1(a); *see also Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 852 (N.D. Cal. 2012). The California Court of Appeal has interpreted this as including any latent defect present during the warranty period, even if the defect only makes itself known at some later date. *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 291 (Ct. App. 2009). Here, Lusson alleges that the "Error 53 code" – by which he presumably means the iOS software's incompatibility with unvalidated Apple hardware – was a kind of latent defect, hidden within his device from the moment he bought it. TAC (Dkt. 48) at ¶ 174. Over a year later, Lusson broke his phone and replaced its screen and home button at a non-Apple vendor. This triggered the Error 53 code, which "bricked" the device after an iOS update.

Both parties focus on the warranty period as the dispositive issue. But Lusson's unmerchantability claim suffers from a more fundamental flaw – namely that Lusson's depiction of the Error 53 problem doesn't actually suggest that Apple sold him an unmerchantable product.

*See Mexia*, 95 Cal. Rptr. 3d at 291 ("[T]he goods must be such that with the defects known they would be salable as goods of the general kind which were described or supposed to be when bought."). By all accounts, Lusson's device was "fit for [its] ordinary purposes" and suitable for sale and use as a smartphone up until the moment he broke it. And by all accounts, the iPhone could have remained so if Lusson had visited an Apple vendor and properly revalidated the phone's security pairing after replacing its parts. *See* TAC (Dkt. 48) at ¶¶ 25-30, 55-58. In other words, if there was a latent defect in Lusson's device, it was a defect of Lusson's own making. The plaintiffs object that Apple never explained the effects of the iPhone's security architecture, setting them up to make faulty repairs. They object also that the revalidation requirement artificially limited the repair aftermarket to a more expensive network of Apple-authorized providers. But merchantability isn't the right vehicle for these arguments, however reasonable the consumers' actions or expectations might have been. Merchantability isn't a freestanding doctrine of reasonable consumer expectations, and a consumer's flawed repairs don't make an otherwise functional product unmerchantable simply because the repair process wasn't better explained.

## II.    Express warranty

The plaintiffs' claims for breach of express warranty turn on two statements Apple made about software compatibility and user experience. The first appeared on Apple's website beginning in July 2015:

> Every iPhone we've made . . . was built on the same belief . . . . [A phone] should have hardware and software that were designed to work with each other. And enhance each other . . . . And whenever there are shiny, new software updates with shiny, new features, you should be able to sit back, relax, and know your phone will get them. And be compatible with them.

*Id.* at ¶ 12 (emphasis omitted). The second appeared in Apple's September 2015 "iOS Security" pamphlet:

> This architecture is central to security in iOS, and never gets in the way of device usability.

*Id.* at ¶ 11 (emphasis omitted).

Although it's questionable whether either of these statements qualifies as the kind of "affirmation of fact or promise" necessary to create an express warranty, there's no need to reach that issue, because no plaintiff claims to have seen the statements before buying an Apple device. Accordingly, Apple's language could not have formed "part of the basis of the bargain" between the buyer and seller, and there can be no warranty on these terms.  U.C.C. § 2-313(1); 15 U.S.C. § 2301(6).

DeNoma and Penner both claim to have seen language "similar" to that at issue here.  But neither plaintiff alleges enough detail to bring a warranty claim out of the realm of conclusory accusation and into plausible notice pleading.  DeNoma doesn't say what the alleged warranties actually promised.  He doesn't reveal the warranties' context or medium.  And he doesn't offer anything about the warranties' timing other than their appearance "since the days of his first iPhone, an iPhone 3G" – in other words, since as early as mid-2008.  TAC (Dkt. 48) at ¶ 74.  Penner's allegations are no clearer.  The statements she alleges she saw were "ubiquitous."  *Id.* at ¶ 79.  They were in stores, on TV, and in print.  *Id.*  And Penner saw them "on an almost-daily basis for nearly two years," but apparently starting no later than 2009.  *Id.* at ¶¶ 79-80.

It's doubtful, in light of these allegations, that either plaintiff saw any Apple statement reasonably contemporaneous with the purchase of an iPhone 6 – occurring in early 2014 for DeNoma and mid-2015 for Penner.  More fundamentally, though, the plaintiffs' allegations give the opposing party only the most scattered mishmash of clues as to the actual warranties at issue.  Of course, breach of warranty doesn't sound in fraud and doesn't have to be pled with specificity.  But with no terms, no timeframe, and no context for the warranties themselves, the plaintiffs have nothing to vindicate – and Apple nothing to defend against – except a loose analogy to some other, better claim.  This isn't enough to satisfy the minimal requirements of Rule 8.  *See, e.g.*, *Martin v. Medtronic, Inc.*, 32 F. Supp. 3d 1026, 1046 (D. Ariz. 2014).

DeNoma does claim he eventually saw the alleged warranty language on Apple's website and in its iOS security pamphlet.  But as DeNoma acknowledges, this was only after he'd bought his phone, at which point his "bargain" with Apple was complete.  DeNoma suggests Apple

misled him into believing he could update his iOS after repairing his screen. But again, this can't be an argument for breach of express warranty, as DeNoma's actions after purchase didn't create any new agreement in which Apple's statements might have played a role.

### III.    Fraud-based claims

The plaintiffs' intentional misrepresentation claims rely on Apple's express warranties, which allegedly misled the plaintiffs into purchasing Apple devices instead of cheaper alternatives without similar repair limitations. But as with the warranty claims themselves, the plaintiffs don't properly plead reliance on an identifiable statement. *See, e.g.*, *Chapman v. Skype Inc.*, 162 Cal. Rptr. 3d 864, 875 (Ct. App. 2013). Only DeNoma and Penner make the attempt, and neither can identify any specific misrepresentation predating the purchase of an affected phone. If vague analogies to later statements aren't enough for express warranty, they're all the more inadequate for claims sounding in fraud. *See* Fed. R. Civ. Pro. 9(b).

Fraudulent concealment includes essentially the same elements as intentional misrepresentation, except that rather than an affirmative statement, the plaintiffs must allege deliberate concealment or failure to comply with a duty to disclose. *See, e.g.*, *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 189 Cal. Rptr. 3d 31, 60 (Ct. App. 2015), *reh'g denied* (June 17, 2015), *review denied* (Sept. 30, 2015); *Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 35-36 (Ariz. 2002), *as corrected* (Apr. 9, 2002). The plaintiffs again fail to meet their burden. To the extent their argument proceeds under a concealment theory, it rests on a conclusory recital of elements. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nothing in the substance of the plaintiffs' pleading suggests that Apple took affirmative steps to cover up the risks of unauthorized repairs, as opposed to simply failing to disclose them. And to the extent the plaintiffs' argument proceeds under a nondisclosure theory, the plaintiffs don't adequately plead a predicate duty under any applicable state law. *See generally* Restatement (Second) of Torts § 551(2). Rather, the plaintiffs' argument seems to turn on Apple's duty to correct the very same misrepresentations DeNoma and Penner never properly alleged.

The claims under California's consumer-protection statutes fail for a similar lack of duty. Under *Wilson*, the "manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (quoting *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009)). Here we have neither. The plaintiffs instead suggest that *Wilson* limited manufacturers' duties in a way the California Court of Appeal never intended. *See Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1036-37 (N.D. Cal. 2014). But this Court is bound by the Ninth Circuit's interpretation of California law until the California Supreme Court offers convincing evidence of a contrary view – which it hasn't. *See id.* at 1037. This rules out any omission-based theories of relief arising under the Consumer Legal Remedies Act, the Fair Advertising Law, or any prong of the Unfair Competition Law. *Wilson*, 668 F.3d at 1140-41.

By contrast, the consumer-protection statutes in Washington and Florida don't appear to require a predicate duty in an omission-based theory for deceptive business practices. Both states, relying on the language of the FTC Act, refer instead to acts and omissions "likely to mislead" or possessing a "capacity to deceive a substantial portion of the public." *State v. Beach Blvd Auto. Inc.*, 139 So. 3d 380, 387 (Fla. Dist. Ct. App. 2014), *reh'g denied* (June 12, 2014); *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 894-96 (Wash. 2009). The in-state plaintiffs have adequately pled a claim in each jurisdiction: They allege that Apple failed to disclose information material to the decision to purchase Apple products, which supposedly led them to purchase phones subject to bricking rather than competing products that were more easily repaired.

Apple disputes the reasonableness of the plaintiffs' actions and the number of consumers allegedly deceived, but these are questions for summary judgment or trial. Apple also argues that the plaintiffs' omission theories don't satisfy the heightened pleading requirements of Rule 9. But Apple asks for more than the rule requires. The essence of the heightened pleading requirement is that the plaintiffs state the factual context necessary to give the defendant full knowledge of any plausible fraud alleged against it – the *who*, *what*, *when*, *where*, and *how* of the

defendant's conduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The plaintiffs have done so. They allege that Apple should have told consumers that unauthorized providers couldn't properly repair Apple devices, that Apple should have revealed this information before purchase in a way consumers might have noticed, and that Apple knew its consumers were misled by its silence. As Apple notes, some courts have required greater specificity. *See, e.g.*, *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009). But Rule 9 doesn't require maximum possible specificity, and an omission theory necessarily prevents plaintiffs from pleading every detail. *See Philips v. Ford Motor Co.*, No. 14-CV-02989-LHK, 2015 WL 4111448, at *12 (N.D. Cal. July 7, 2015). Apple has all it needs to understand and defend against the consumer-protection claims brought under Washington and Florida law.

### IV.     Negligence and negligent misrepresentation

In the product-defect context, the economic-loss rule erects a barrier between contract and tort remedies. Damage to the defective product is recovered in contract, while any related damage to other personal property – and injury to people – is recovered in tort. *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 874 (9th Cir. 2007). This Court previously dismissed the plaintiffs' negligence claims because the plaintiffs hadn't adequately pled that Error 53 caused property damage independent of any damage to the phones themselves. Order (Dkt. 43) at 2-3. The plaintiffs alleged data loss, but it wasn't clear this loss was irreversible.

Now three plaintiffs – Lange, Penner, and Saenz – allege permanent data loss due to Error 53. The lost data includes images, texts, and contact information, all of which was stored on bricked iPhones and supposedly destroyed as a result.

Apple proposes that loss of electronic data, as a rule, can't be compensated in tort when the loss was caused by product defects in the data-storage device. But to prevail on this point, Apple needed to conduct an analysis of the economic-loss rule in each of the states (Washington, Arizona, and Florida) where a plaintiff properly alleged data loss. Apple hasn't done so. In its motion to dismiss, Apple relies entirely on a short line of cases arising out of a single principle in

Minnesota law.  *See Transp. Corp. of Am. v. Int'l Bus. Machines Corp.*, 30 F.3d 953, 957 (8th Cir. 1994).  But this principle doesn't apply in every state.  *See Jimenez v. Superior Court*, 58 P.3d 450, 456-57 (Cal. 2002).  And at first glance Apple's position (and the position articulated in Apple's case law) seems wrong.  Consider two hypotheticals that, as it turns out, aren't so unrealistic.  First, a photo is stored electronically inside a phone, and is destroyed because the phone bursts into flames.  Second, a photo sits physically near a phone, and is destroyed because the phone bursts into flames.  Should the economic-loss rule really preclude a tort claim in the first scenario but not the second?  The point of the rule isn't to deny recovery based on the property's physical location or material state.  The point of the rule is to keep personal property damages in contract when, unlike ordinary injuries, they're governed by the parties' contract.  *See Seely v. White Motor Co.*, 403 P.2d 145, 151 (Cal. 1965).  In any event, Apple's argument under the economic-loss rule requires further briefing and may require factual development.  Apple's motion to dismiss the negligence claims brought by Lange, Penner, and Saenz is therefore denied without prejudice to raising the economic-loss rule again at the summary judgment stage.[1]

### V.     Injunctive relief

As in their prior complaint, the plaintiffs haven't established "a real and immediate threat of repeated injury" as required for standing to pursue injunctive relief.  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc).  Apple's alleged deception can't give rise to future injury because it consists of a nondisclosure of which the plaintiffs are already aware, affecting devices the plaintiffs don't claim to be buying more of.  *See Phillips v. Apple Inc.*, No. 15-CV-04879-LHK, 2016 WL 1579693, at *9 (N.D. Cal. Apr. 19, 2016); *cf. Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-CV-05222-VC, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014) ("It may very well be that the legislative intent behind California's consumer protection statutes would be best served by enjoining deceptive labeling.  But the power of federal courts is limited,

---

[1] Apple has also moved to dismiss the negligent misrepresentation claims for lack of an affirmative statement, citing California law.  But an affirmative statement isn't universally an element of negligent misrepresentation, and the only California claim is dismissed regardless for failure to plead permanent data loss.

and that power does not expand to accommodate the policy objectives underlying state law." (citation omitted)).  The plaintiffs object that Apple's software fix and reimbursement program haven't restored their phones or repaid them for their losses.  But to the extent the plaintiffs seek an injunction requiring that Apple somehow make them whole, they aren't raising a claim for injunctive relief based on the threat of future injury, but a duplicative claim for past damages with no likelihood of recurring.

*     *     *

For the reasons stated above, the Court grants the motion to dismiss with respect to Counts I, II, and V-X of the operative complaint.  Counts XI and XII may proceed under the plaintiffs' omission theory.  Counts III and IV may proceed as to the three plaintiffs who have alleged permanent data loss.  Apple's requests for judicial notice are denied as moot.

A case management conference is set for November 8, 2016, at 1:30 p.m.  A joint case management statement is due no later than November 1, 2016.

**IT IS SO ORDERED.**

Dated:  October 19, 2016

_____
VINCE CHHABRIA
United States District Judge